IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBRA JODRY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) NO. 3:20-cv-00243 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| FIRE DOOR SOLUTIONS, LLC and LIFE SAFETY COMPLIANCE SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 44, "Motion"). Plaintiff has filed a Response (Doc. No. 47). Defendants have filed a Reply (Doc. No. 48). The Motion is ripe for review.

For the reasons discussed, the Court will deny Defendants' Motion.

## **BACKGROUND**[1]

---

[1] The facts set forth herein are alleged in Plaintiff's Second Amended Complaint and are accepted as true for purposes of the Motion. To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely what Plaintiff claims, and not what the Court is accepting as true for purposes of the Motion.

Defendants removed this case to federal court in March 2020 (Doc. No. 1) then filed a motion to dismiss for failure to state a claim (Doc. No. 8). Plaintiff then filed a motion for leave to amend her original Complaint (Doc. No. 11), which was granted, rendering moot Defendants' motion to dismiss (Doc. No. 14). Plaintiff then filed her First Amended Complaint (Doc. No. 15). Defendants again filed a motion to dismiss for failure to state a claim (Doc. No. 17). Plaintiff then filed a motion for leave to amend her First Amended Complaint (Doc. No. 23), which did not comply with local rules (Doc. No. 24) and thus Plaintiff subsequently amended her motion. (Doc. No. 25). This amended motion was granted, rendering moot Defendants' second motion to dismiss. (Doc. No. 38). Plaintiff then filed her Second Amended Complaint (Doc. No. 39), which is now the operative Complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Defendants filed the present Motion in response to the Second Amended Complaint (Doc. No. 43). In both their Motion and their Reply, Defendants make much of the fact

Plaintiff, a female, was hired in May 2018 by Defendant Fire Door Solutions as Executive Vice President of its wholly owned subsidiary, Defendant Life Safety Compliance Solutions. (Doc. No. 39 at 2). At the time of her hiring, her primary job duty was to build a team in the Nashville Office and oversee a new business line for Defendant Life Safety Compliance Solutions, LLC. (*Id.*). Six employees, including two sales representatives, reported to her. (*Id.*). Plaintiff was the only female executive employed by Defendants. (*Id.* at 3).

In February of 2019, Defendants hired a new Chief Operating Officer ("COO"), who diminished Plaintiff's responsibilities and assigned her work to male employees (including one of her subordinates). (*Id.*). The new COO told Plaintiff that he had disagreed with her salary when they previously worked together at a different company, that he would be reducing her salary to be equivalent to a female Director hired by Defendants, and that he was reducing her title from Executive Vice President to Director. (*Id.*). The COO attempted to reduce her salary because of her gender. (*Id.*).

After this conversation, Plaintiff experienced what she claims to be disparate treatment, in the form of Defendants: 1) requiring physical labor from Plaintiff but not similarly situated male employees; 2) excluding Plaintiff from the Christmas Party, 3) requiring female employees to follow a chain of command, but not requiring the same for male employees, 4) not allowing Plaintiff to hire sales representatives to assist with sales and marketing after her two sales representatives were terminated; 5) expecting Plaintiff to market her own services; and 6) not

---

that they are moving to dismiss Plaintiff's *Second* Amended Complaint. (Doc. No. 44 at 1-3; Doc. No. 48 at 2-3). Though Defendants are apparently, and perhaps understandably, frustrated with having to file three separate motions to dismiss, such frustration is not something that supports the granting of the Motion.

providing Plaintiff an annual review and effectively excluding her from a bonus incentive program, despite allowing males to participate. (*Id.* at 3-4, 5).

Additionally, one of Plaintiff's male subordinates began assigning work to Plaintiff's direct reports, and he informed Plaintiff that he no longer reported to her. (*Id.* at 4). When Plaintiff went to the COO, he informed her that she had no right to question his decision and that the male subordinate had been promoted to her position. (*Id.*). Plaintiff was then left out of strategy meetings and traveled less for work, and when she did travel, she did not receive an offer of company-sponsored housing (which was given to male employees). (*Id.*).

Defendants then hired a male Vice President in March 2019. (*Id.* at 4). Defendants assigned him all of Plaintiff's job responsibilities, all of her direct reports, and all of her contracts, and also transferred one of Plaintiff's team members to be under his supervision. (*Id.*). Despite taking all of these actions, Defendants did not tell Plaintiff what had occurred until two weeks later. (*Id.*).

Later that spring, Plaintiff was not invited to a meeting with key personnel making introductions in Defendants' Kansas office. (*Id.* at 5). Plaintiff also was not invited to a training event for the sales department, which she herself had been requesting for approximately a year. (*Id.*).

On June 26, 2019, Plaintiff claims, she was constructively discharged when she was informed she could remain employed with Defendants only if she took a 32% cut in her pay, was demoted from her position as Executive Vice President, and would report to a less-qualified male supervisor. (*Id.*). Plaintiff states that she was given an "ultimatum to accept the demotion or leave." (*Id.* at 5).

Plaintiff's Second Amended Complaint brings a sole claim, one for gender-based discrimination in violation of the Tennessee Human Rights Act ("THRA"). (*Id.* at 6-7). Defendants

have moved to dismiss, claiming that Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

## **LEGAL STANDARD**

For purposes of a 12(b)(6) motion to dismiss, the Court must take all the factual allegations in the complaint as true, as this Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such

4

allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## **DISCUSSION**

Plaintiff brings her sole claim under the THRA, which provides a state remedy for sex discrimination. Tenn. Code Ann. § 4-21-101, *et seq*. The statute states "[i]t is a discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . " Tenn. Code Ann. § 4-21-401(a)(1). Though this is a state discrimination law, courts apply the same principles as they would to a claim brought under Title VII or 42 U.S.C. § 1981.[2] *See e.g.*, *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) ("The stated purpose and intent of the Tennessee Act is to provide for execution within Tennessee of the policies embodied

---

[2] It is true that the THRA is broader than Title VII in some respects, *Walton v. Interstate Warehousing, Inc.*, No. 3:17-cv-1324, 2020 WL 1640440, at *5 (M.D. Tenn. Apr. 2, 2020), but not any that are relevant to the analysis in this case.

5

in the federal civil rights laws. Accordingly, our analysis of the issues in this appeal is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act." (internal citations omitted)); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at *3 (M.D. Tenn. May 19, 2016) (noting that only one analysis should be conducted for Title VII, 42 U.S.C. § 1981, and the THRA).

At the outset, the Court notes that many of the cases cited in Defendants' briefing arise in the context of a summary judgment motion, not a motion to dismiss. In discrimination cases, the *McDonnell Douglas* framework dictates that for a plaintiff to survive a motion for summary judgment: 1) a plaintiff must show the court that he or she has met his or her *prima facie* case, 2) the burden then shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason, and 3) the burden then shifts back to the plaintiff to show that the reason offered by the defendant is a pretext. *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a *prima facie* case under *McDonnell Douglas*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).

This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a *prima facie* case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

Discussing the plausibility requirement, *Keys* noted:

> [T]he Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims . . . Thus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. 1937, that [Defendant] "discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." . . . According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

684 F.3d at 610 (some internal citations omitted). In *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015), the Sixth Circuit indicated that a plaintiff must plead 1) membership in the protected class, 2) specific adverse employment actions taken against the plaintiff, and 3) instances in which the plaintiff was treated less favorably than others not in the protected class. *Id.* at 461 (discussing

7

*Swierkiewicz* and *Keys*). From the facts in the complaint, a court should be able to draw a "reasonable inference of discrimination."[3] *Id.*; *see also Bolden v. Lake Cty. Bd. of Educ.*, No. 119CV01262STAJAY, 2020 WL 1163938, at *2 (W.D. Tenn. Feb. 13, 2020), *report and recommendation adopted*, No. 119CV01262STAJAY, 2020 WL 1159760 (W.D. Tenn. Mar. 10, 2020).

Alternatively, though a plaintiff is not *required* to plead the *prima facie* case under *McDonnell Douglas*, if a plaintiff does adequately plead her *prima facie* case, then the plausibility requirement is met. *Vandine v. Trinity Health Sys.*, No. 2:14-CV-1242, 2015 WL 5216715, at *4 (S.D. Ohio Sept. 8, 2015).

Contrary to this clear precedent from the Sixth Circuit and the Supreme Court that a plaintiff does not have to make out a *prima facie* case at the motion to dismiss stage, Defendants claim that Plaintiff must plead a *prima facia* case and then claim that Plaintiff has not done so in

---

[3] The Second Circuit has adopted a lesser standard:

> [A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Sixth Circuit has indicated that this standard is not harmonious with the analysis in *Keys* and that it should not be used in this Circuit. *Doe v. Miami Univ.*, 882 F.3d 579, 588–89 (6th Cir. 2018). However, the Sixth Circuit has seemingly recently backtracked from this position. *Doe v. Oberlin Coll.*, 963 F.3d 580, 588–89 (6th Cir. 2020) ("[T]his court has explicitly rejected the lower pleading standard that the majority now adopts.") (Gilman, J. dissenting).

the Second Amended Complaint. Defendants assert that to make out a *prima facie* case for a discrimination claim under the THRA, "a plaintiff must show 1) that she is a member of a protected group; 2) that she was subject to an adverse employment decision; 3) that she was qualified for the position; and 4) that she was replaced by a person outside of the protected class."[4] (Doc. No. 44 at 4) (citations omitted). Defendants then attack the second and fourth elements of Plaintiff's *prima facie* case, respectively, claiming that 1) Plaintiff has pled a fact that affirmatively bars her from claiming that she was subjected to an adverse employment action and also has not adequately alleged an adverse employment action in the form of constructive discharge,[5] and 2) Plaintiff has pled a fact that affirmatively bars her from claiming that she was replaced. (*Id.* at 2, 4).

For reasons the Court discusses below, the Court will discuss each of these arguments in turn even though they are misguided inasmuch as a plaintiff can survive a motion to dismiss even without making allegations sufficient to establish the elements of a *prima facie* case.

### A. Adverse Employment Action in the Form of Constructive Discharge

Defendants first attack Plaintiff's allegation in the Second Amended Complaint that she was "constructively discharged." (Doc. No. 44 at 4). Defendants argue that "[h]ere, the fact remains that Plaintiff quit her job. She never took a demotion, a reduction in pay, a reduction in benefits, and she was not terminated. On the contrary, and taking her allegations as true, Plaintiff

---

[4] As discussed herein, though this is how Defendants lay out the *prima facie* case, this is neither the only available *prima facie* case nor the appropriate juncture in the case to require Plaintiff to meet her *prima facie* case. Nevertheless, the Court finds it helpful to state Defendants' articulation of the *prima facie* case at the outset, as Defendants' arguments rely on this statement of the *prima facie* case throughout their Motion.

[5] A constructive discharge is a type of adverse employment action. *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

9

could have remained employed but chose to resign." (*Id.* at 5). The Court agrees that Plaintiff's use of the term "constructively discharged" is a legal conclusion, which the Court does not have to accept at face value. *See Fritz*, 592 F.3d at 722. Instead, the Court will look at whether Plaintiff has sufficiently pled facts plausibly suggesting constructive discharge.[6] Defendants' attacks on Plaintiff's Second Amended Complaint regarding the alleged adverse employment action apparently are twofold: 1) that Plaintiff claiming that she "quit" is a fact that affirmatively bars her from claiming that she suffered an adverse employment action (in the form of a constructive discharge), and 2) that Plaintiff has not sufficiently pled Defendants' intent of forcing her to quit as required for her to establish constructive discharge. (*Id.* at 4-5; Doc. No. 48 at 2-3).

To show a constructive discharge, a plaintiff must show 1) that the employer created working conditions that are intolerable from a reasonable person's point of view, and 2) that the employer did so with the intent of forcing the employee to quit. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). As for the first requirement, "[i]n order to maintain an action for constructive discharge, [a plaintiff] must show that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). The Sixth Circuit considers a number of factors to decide whether this first requirement is satisfied:

---

[6] Although, as discussed, Plaintiff does not need to make out her *prima facie* case under *McDonnell Douglas* on a motion to dismiss, an allegation of an adverse action is required for a plaintiff to state a plausible claim. *James*, 592 F. App'x at 461 (discussing *Swierkiewicz* and *Keys*). The THRA itself also clearly requires a "discharge" to be actionable under these circumstances. Tenn. Code Ann. § 4-21-401(a)(1). Since Defendants have essentially alleged that Plaintiff has pled no adverse action or termination, which would mean Plaintiff has not sufficiently pled a claim under which she is entitled to relief, the Court will consider whether Plaintiff has pled an adverse action—which in this case would be a constructive discharge.

10

> Whether a reasonable person would have feel [sic] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan*, 259 F.3d at 569 (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). As for the second requirement, the Sixth Circuit has found an employer's intent for the employee to resign to exist when "[i]t is completely foreseeable that a reasonable person would have resigned under these circumstances." *Id.* at 573; *Presley v. Ohio Dep't of Rehab. & Correction*, 675 F. App'x 507, 515 (6th Cir. 2017) (quoting *Logan*); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

Defendants cite *Sander v. Gray Television Grp., Inc.*, 478 F. App'x 256 (6th Cir. 2012) for the proposition that "[a]n employee who voluntarily retires or resigns cannot claim that she suffered an adverse employment action." (Doc. No. 44 at 4). In that case, the plaintiff voluntarily resigned from his job, and the Sixth Circuit found that he could not prove a *prima facie* case of age discrimination or retaliation. *Sander*, 478 F. App'x at 257. Plaintiff argues that "[t]his case has nothing to teach in the case at bar. Sander did not face any material loss of pay or benefits, or any of the other factors cited *supra*." (Doc. No. 47 at 3). The court in *Sander*, which arose in the summary judgment context, expressly noted that the plaintiff had been found to *not* have been terminated or constructively discharged, 478 F. App'x at 261, whereas here the Court of course has not yet made any such finding and is merely at the stage of determining whether constructive discharge is adequately alleged in the Complaint. Moreover, the plaintiff in *Sander*, who had voluntarily resigned, made no argument that he faced any of the factors (circumstances) listed in *Logan*. Therefore, the Court finds that *Sander* is not applicable to the case at hand.

11

Defendants also cite the Court to *Waltherr-Willard v. Mariemont City Sch.*, No. 1:12-CV-476-HJW, 2014 WL 347027, at *8 (S.D. Ohio Jan. 30, 2014), *aff'd*, 601 F. App'x 385 (6th Cir. 2015) for the same proposition quoted above. In that case, which arose in the context of a summary judgment motion, a teacher retired and attempted to claim that her retirement was the result of a constructive discharge. *Id.* However, the record reflected that the teacher voluntarily retired and had been thinking of retirement prior to a transfer to another school. *Id.* The plaintiff was unable to show that her working conditions were difficult or unpleasant enough to compel a reasonable person to resign, or to show any factor the Sixth Circuit has deemed relevant. *Id.* at *9. The court explained that "Plaintiff was not demoted; her salary was not reduced; she was not reassigned to 'degrading' work or supervision by a younger supervisor; she was not 'harassed' in any way based on her age; and she continued as a tenured language teacher with no loss of benefits. Very simply, plaintiff was not 'compelled' to resign." *Id.* Again, *Waltherr-Willard* is different from the case at hand, where Plaintiff alleges facts to show a constructive discharge that were missing (*i.e.*, not supported by evidence as required in the summary judgment context) in *Waltherr-Willard*.

Despite Defendants' argument to the contrary, the fact that Plaintiff quit does not negate her constructive discharge claim. Unlike *Sander* or *Waltherr-Willard*, Plaintiff has alleged many of the factors the Sixth Circuit set out in *Logan*: 1) she was demoted, 2) she was suffered a 32% cut in pay, 3) she was (unexpectedly) directed to report to a less-qualified male supervisor; and 4) many of her duties were reassigned and her workload reduced. (Doc. No. 39 at 4, 5).

Defendants also argue that, in order to make out a claim for constructive discharge, a plaintiff must show that the employer had intent for the employee to resign, which Defendants claim is not present in this case. (Doc. No. 48 at 1-2). For this proposition, Defendants cite *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) which arose in the context of appealing a ruling

granting summary judgment and states the two-prong constructive discharge test as: "Plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Id.* at 728. Defendants do not note that, as discussed above, the Sixth Circuit also allows for an employer's intent to be found when "[i]t is completely foreseeable that a reasonable person would have resigned under these circumstances." *Logan*, 259 F.3d at 573. Though *Laster* did not mention that intent can be found when it is foreseeable that a reasonable employee would resign, the court cites to *Logan* for its statement of the two-pronged test required to show constructive discharge. *Laster*, 746 F.3d at 728. In *Laster*, the court found that the plaintiff did not present any evidence of the employer's intent, and he resigned because he inadvertently received incorrect information. *Id.* Since this error was inadvertent and the employer therefore had no indication that the employee would resign, the court in *Laster* did not need to address whether it was foreseeable to the employer that the employee would resign. Therefore, the Court does not find persuasive Defendants' reliance on *Laster*'s phrasing of the rule.[7] Additionally, the Court notes that since *Laster* arose in the summary judgment context, instead of the motion to dismiss context, the plaintiff in that case carried an evidentiary burden that Plaintiff here does not carry, as Plaintiff here must merely meet the "plausibility" pleading requirement.

---

[7] Defendants also cite to *Trepka v. Bd. of Educ.*, 28 F. App'x 455 (6th Cir. 2002) for the proposition that "[w]ith respect to the employer's intent, even if an employee sufficiently shows discriminatory behavior, 'simple proof of discrimination is not enough to convert an employee's resignation into an actionable constructive discharge.'" (Doc. No. 48 at 2) (quoting *Trepka)*. In *Trepka,* the court noted that the plaintiff had "not demonstrated one genuine issue of material fact as to whether she was discriminated against." 28 F. App'x at 463. Therefore, as in *Laster*, the court in that case would have had little reason to discuss whether it was foreseeable to the employer that the employee would resign, since the plaintiff had apparently raised no genuine dispute of fact on that (or indeed any) issue. Once again, Defendants have relied on a case wherein it was revealed, at the summary judgment stage, that the plaintiff lacked the evidence (required at the summary judgment stage) of things Plaintiff here has alleged and need not have shown yet with evidence.

13

From the facts alleged in the Second Amended Complaint, the Court finds that Plaintiff has sufficiently alleged that she was constructively discharged, suffering an adverse employment action. Since Plaintiff does not actually have to show her *prima facie* case on a motion to dismiss, Plaintiff's supposed inability to satisfy the second element as such might not have been dispositive anyway.[8] But even if it had been dispositive, the supposed inability appears at present to be illusory, as Plaintiff has alleged facts that plausibly suggest satisfaction of what (according to Defendant, at least) is the second element of her *prima facie* case.

## B. Replacement

Defendants assert that because Plaintiff's job responsibilities were (according to Plaintiff's own allegations) given to other existing employees instead of a new employee, she has not been "replaced." (Doc. No. 44 at 5). That is, Defendants essentially posit (and the Court accepts *arguendo*) that a necessary implication from the allegations of the Second Amended Complaint is that Plaintiff was not replaced. Seeking to capitalize on this implication, Defendants cite to several cases, all decided in the context of a motion for summary judgment, for the proposition that when a plaintiff in a discrimination case claims not that she was replaced by another employee but rather that her job duties were divvied up among existing employees, the plaintiff cannot recover and the complaint should be dismissed. (Doc. No. 44 at 4-7). By citing only to cases in the summary judgment context, Defendants improperly conflate an evidentiary standard (as used on summary judgment) with the pleading standard (as used on a motion to dismiss), and they attempt to impose on Plaintiff the burden of satisfying a *prima facie* case, a burden Plaintiff does not carry until a

---

[8] That is not to say that a failure to allege an adverse employment action would not be dispositive under *James*. But it is to say that failure to satisfy a particular element of a *prima facie* case (meaning here, according to Defendants, an adverse employment action) would be dispositive on the grounds that a plaintiff must plead all elements of a *prima facie* case.

14

motion for summary judgment. Defendants here are not attacking the sufficiency of Plaintiff's allegations, but instead are claiming that Plaintiff has pled facts that affirmatively bar her claim. That is, Defendants claim not that Plaintiff has not pled *enough*, but rather that Plaintiff has pled *too much* (or just enough of the wrong facts). Generally, when a plaintiff pleads facts that would cause her claim to fail as a matter of law, a motion to dismiss will be granted. *See e.g.*, *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 358 (6th Cir. 2014). Defendants claim that this principle is applicable here because in her Second Amended Complaint, Plaintiff alleges that "Defendants have transferred all of her job responsibilities to less-qualified male employees." (Doc. No. 44 at 6) (quoting the Second Amended Complaint).

Plaintiff argues that she is not required to plead a *prima facie* case, but that in any event a *prima facie* case can be satisfied by showing, as an alternative to replacement, that she faced disparate treatment. (Doc. No. 47 at 5-6). Defendants do not even address whether a plaintiff may establish a *prima facie* case by showing such disparate treatment rather than replacement. In fact, a plaintiff indeed may do so. As discussed above, "the precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted). And indeed, the Sixth Circuit is clear that, in a disparate treatment case such as the instant case,[9] the fourth element of a *prima facie* case can be *either* that a plaintiff was replaced *or* that a plaintiff was treated differently than similarly

---

[9] In her Second Amended Complaint, Plaintiff specifically states that she is bringing a claim for disparate treatment. (Doc. No. 1 at 3, 4, 7). Plaintiff alleges that she was treated differently in many ways than other similarly situated employees. (*Id.* at 3-4, 6). Plaintiff states that these employees were male and reported to the same COO. (*Id.*).

15

situated,[10] non-protected employees. *See e.g.*, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (describing the fourth element as "replaced by a person outside the protected

---

[10] At the summary judgment stage, "the plaintiff must show that the 'comparables' are similarly situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Courts in this Circuit have regularly found sufficient, in assessing the adequacy of a plaintiff's complaint, allegations that the plaintiff was treated less favorably than similarly situated coworkers coupled with allegations as to how the plaintiff was treated less favorably. *See e.g.,*, *Guinn v. Mount Carmel Health*, No. 2:09-CV-226, 2012 WL 628519, at *9 (S.D. Ohio Feb. 27, 2012) ("[Plaintiff] specifically made allegations that he was treated less favorably than similarly situated coworkers . . . . Moreover, not only does [Plaintiff] allege that he was treated less favorably than his similarly situated white coworkers, he states specifically in what way he was treated less favorably."); *Campbell v. Korleski*, No. 2:10-CV-1129, 2011 WL 2748641, at *6 (S.D. Ohio July 14, 2011) ("[Plaintiff] has alleged that he was treated less favorably than his similarly situated white coworkers . . . . He avers that (unlike his similarly situated white coworkers) he was placed into positions where his opportunity for advancement was minimal. A reasonable inference can be drawn from [Plaintiff's] allegations in the amended complaint that he was denied promotions or not offered promotions that his white coworkers were given and/or offered."). One court has gone so far as to state that, under *Swiekiewicz*, a plaintiff's failure to specifically plead that she was treated less favorably than someone outside of her class did not merit dismissal. *Ndene v. Columbus Acad.*, No. 2:09-CV-892, 2010 WL 1031864, at *4 (S.D. Ohio Mar. 17, 2010); *see also Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 818 (N.D. Ohio 2015) ("But determining whether employees are similarly situated is a fact-bound inquiry not proper for a motion to dismiss.").

Here, in her Second Amended Complaint, Plaintiff stated that:

> The Defendants treat male employees more favorably than female employees, including Plaintiff. Plaintiff was routinely deprived of employment opportunities, financial and otherwise, which the Defendants have granted to similarly-situated male employees. The Defendants applied these benefits to male employees under Mr. Eberts, whereas Plaintiff was not applied such benefits. The Defendants therefore treated similarly situated employees outside of Plaintiff's classification more favorably.

(Doc. No. 39 at 6). Plaintiff additionally listed various ways in which Defendants treated her less favorably than male employees, including: 1) requiring physical labor from Plaintiff but not similarly situated male employees; 2) excluding Plaintiff from the Christmas party, 3) requiring female employees to follow a chain of command, but not requiring the same for male employees, 4) not allowing Plaintiff to hire sales representatives to assist with sales and marketing after her two sales representatives were terminated; 5) expecting Plaintiff to market her own services; and

16

class or treated differently than similarly situated non-protected employees"); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("Although the District Judge found no *prima facie* case had been established by Plaintiff because of the lack of the fourth 'replaced-by-a-"non-protected"-person' element of the *McDonnell Douglas/Burdine* criteria, a plaintiff can also make out a *prima facie* case by showing, in addition to the first three elements, that 'a comparable non-protected person was treated better'.");

As noted above, in attempting to make hay out of Plaintiff's implication that she was not "replaced," Defendants cite several cases. (Doc. No. 44 at 4-7). None of these cases, when reciting the elements of a *prima facie* case, mentions a "different treatment" alternative to replacement when reciting the *prima facie* case.[11] But such omission in no way changes the reality that "[i]n disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002). None of the cases cited to by Defendants for

---

6) not providing Plaintiff an annual review and effectively excluding her from a bonus incentive program, despite allowing males to participate. (*Id.* at 3-4, 5). Therefore, the Court finds that Plaintiff has made sufficient allegations from which it can draw a reasonable inference that she was treated differently from similarly situated employees.

Additionally, the Court notes that it would be inappropriate to dismiss Plaintiff's claim when the "similarly situated" standard might not even apply, since the Court has not yet determined whether Plaintiff will be required to meet her *prima facie* case later in this litigation, or whether the *McDonnell Douglas* burden-shifting approach will be inappropriate due to evidence of direct discrimination. *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2013 WL 623495, at *8 (N.D. Ohio Feb. 19, 2013), *aff'd sub nom. Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501 (6th Cir. 2016) ("Plaintiff has thus alleged a viable gender discrimination claim and is not required, at this stage, to establish an inference of discrimination based on defendants' treatment of similarly situated male employees.").

[11] *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (not including the alternative to replacement in a non-disparate treatment case); *Lilley v. BTM Corp.*, 958 F.2d 746, 753 (6th Cir. 1992) (same); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (same); *Stearman v. Ferro Coals, Inc*, 751 F. App'x 827, 830 (6th Cir. 2018) (same).

17

this proposition were a disparate treatment action. Additionally, the Court notes that several cases cited by Defendants throughout their brief *do* include the "similarly situated" alternative to replacement for the fourth element of a *prima facie* case. *Bohannon v. Baptist Mem'l Hosp.-Tipton*, No. 08-2220-STA, 2010 WL 2569285, at *4 (W.D. Tenn. June 21, 2010) (noting that *Grosjean* has not been overruled, and also analyzing both replacement and disparate treatment); *Waltherr-Willard*, 2014 WL 347027, at *7 (stating the fourth prong as "replaced by a substantially younger employee or treated differently than similarly situated substantially younger employees"); *Sander*, 478 F. App'x at 263 (noting that plaintiff had failed to show either of the alternatives under the fourth element).

Defendants may be correct that when job duties are divvied up among existing employees, instead of given to a newly hired employee, there has been no replacement. (Doc. No. 44 at 5). But for the reasons discussed above, that is not to say that in such circumstances, the fourth element of a *prima facie* case cannot be satisfied. Defendants' characterization of the *prima facie* case as unequivocally requiring Plaintiff to have been replaced is incorrect. Plaintiff has sufficiently shown the Court that her claim is not barred by a supposed inability, based on the allegations of the Second Amended Complaint, to show "replacement" in order to satisfy the fourth element of her *prima facie* case. Plaintiff has not pled facts that bar her claim. That is, Plaintiff has instead alleged facts indicating that she may alternatively satisfy the fourth element by showing different treatment for employees similarly situated to her.[12] Since Plaintiff does not actually have to show her *prima facie* case on a motion to dismiss, Plaintiff's supposed inability to satisfy the fourth

---

[12] The Court does not, at this juncture, have to decide the precise *prima facie* case Plaintiff must satisfy. So it does not mean to say for certain what Plaintiff *must* show to satisfy her applicable *prima facie* case. It means only to say that the allegations of her Second Amended Complaint plausibly suggest, contrary to Defendants' assertions, that she *could* satisfy the *prima facie* case she will be required to satisfy.

18

Case 3:20-cv-00243 Document 51 Filed 12/30/20 Page 18 of 20 PageID #: 362

element might not have been dispositive anyway. But even if it had been dispositive, the supposed inability appears at present to be illusory, as Plaintiff has alleged facts that plausibly suggest satisfaction of an alternative fourth element of her *prima facie* case.

As discussed previously, even without pleading all elements of *prima facie* case, Plaintiff can survive the Motion be adequately alleging (1) membership in the protected class, (2) specific adverse employment actions taken against Plaintiff and (3) instances in which Plaintiff was treated less favorably than others not in the protected class. *James*, 592 F. App'x at 461 (discussing *Swierkiewicz* and *Keys*). From the facts in the complaint, the Court should be able to draw a "reasonable inference of discrimination." *Id.* Plaintiff has met this requirement by pleading (1) that she is female, (2) that she suffered an adverse employment action in the form of constructive discharge, and (3) instances in which she was treated less favorably than others not in the protected class. From these facts, the Court feels that it can make a "reasonable inference of discrimination" *James*, 592 F. App'x at 461. Therefore, the Court finds that Plaintiff has sufficiently pled a claim of discrimination under the THRA.

That being so, it ends up being immaterial that, as the Court has found in rejecting Defendants' arguments, Plaintiff has adequately alleged what Defendants have described as the second and fourth elements of Plaintiff's *prima facie* case. The Court has addressed Defendants' argument and discussed why the Second Amended Complaint actually does satisfy these elements, even though (contrary to Defendants' reliance on an incorrect pleading standard) Plaintiff is not required to make out a *prima facie* case. The Court has done so because in discussing why Plaintiff has adequately alleged these elements and has not alleged facts that would preclude the existence of these elements, the Court has shed light on why Plaintiff's allegations are adequate under the correct pleading standard as prescribed by *James*. The Court has primarily framed and organized

19

its discussion around elements of Plaintiff's purported prima *facie case* because Defendant has done so in its briefing, but the Court discusses these elements as part of its showing that Plaintiff has met the applicable *James* pleading standard and that Defendant has not shown otherwise.

## CONCLUSION

For the reasons discussed, the Court will deny Defendants' Motion.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE